**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| PATRICIA GURROLA, ALEJANDRO ARREOLA, BRITINI BROUGHTON, EILEEN AVILES, COURNTEY DESCHAMP, YVONNE LAMENDOLA, SUSHMADAVI LAKERAM and GERMAINE DOLLISME, individually and as a representative of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>Defendant. | Civil No. 1:25-cv-00358<br><br>Hon. Jorge L. Alonso |

**DEFENDANT THE PROCTER & GAMBLE GOMPANY'S**
**MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 2

A. The FDA's Regulations Approving Fluoride Toothpastes ........ 2

B. Plaintiffs' Lawsuit ........ 4

PROCEDURAL STANDARD ........ 4

ARGUMENT ........ 4

I. Plaintiffs' Claims Are Expressly Preempted by the FDCA ........ 4

II. Plaintiffs' Theories of Deception Are Not Plausible ........ 9

III. Plaintiffs Fail to Allege Their Consumer Protection Claims with the Particularity Required by Rule 9(b). ........ 12

IV. Plaintiffs' Implied Warranty Claim Fails for Additional Reasons. ........ 14

V. This Court Should Strike Allegations Regarding the Alleged Effects of Fluoride ........ 15

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................ 4

*Bell v. Publix Super Mkts., Inc.*,
982 F.3d 468 (7th Cir. 2020)........................................................................... 8

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001)........................................................................... 9

*Bohen v. ConAgra Brands, Inc.*,
2024 WL 1254128 (N.D. Ill. Mar. 25, 2024)........................................... 10, 11, 12

*Bowling v. Johnson & Johnson*,
65 F. Supp. 3d 371 (S.D.N.Y. 2014)............................................................ 6, 7, 8

*Brodsky v. Aldi Inc.*,
2021 WL 4439304 (N.D. Ill. Sept. 28, 2021).................................................... 9

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012)........................................................................... 4

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014)..................................................................... 13, 14

*Caronia v. Philip Morris USA, Inc.*,
715 F.3d 417 (2d Cir. 2013)........................................................................... 14

*Castaneda v. Amazon.com, Inc.*,
679 F. Supp. 3d 739 (N.D. Ill. 2023)................................................................ 9

*Cosgrove v. Or. Chai, Inc.*,
520 F. Supp. 3d 562 (S.D.N.Y. 2021)............................................................. 14

*Craw v. Clorox Co.*,
692 F. Supp. 3d 854 (C.D. Ill. 2023)................................................................ 9

*Critcher v. L'Oreal USA, Inc.*,
959 F.3d 31 (2d Cir. 2020).............................................................................. 6

*Engram v. GSK Consumer Healthcare Holdings (US), Inc.*,
2021 WL 4502439 (E.D.N.Y. 2021)................................................................. 10

*Goldstein v. Walmart, Inc.*,
637 F. Supp. 3d 95 (S.D.N.Y. 2022)................................................................ 8

*Gutterman v. Target Corp.*,
242 F. Supp. 3d 695 (N.D. Ill. 2017)........ 11

*Hadley v. Kellogg Sales Co.*,
273 F. Supp. 3d 1052 (N.D. Cal. 2017)........ 14

*Haywood v. Massage Envy Franchising, LLC.*,
887 F.3d 329 (7th Cir. 2018)........ 13

*Higgins v. Yamaha Motor Corp.*,
741 F. Supp. 3d 768 (N.D. Ill. 2024)........ 14

*Hoffmann v. Kashi Sales, L.L.C.*,
646 F. Supp. 3d 550 (S.D.N.Y. 2022)........ 14

*Karlinski v. Costco Wholesale Corp.*,
616 F. Supp. 3d 753 (N.D. Ill. 2022)........ 10

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2020)........ 13

*Lee v. Canada Goose US, Inc.*,
2021 WL 2665955 (S.D.N.Y. June 29, 2021)........ 11

*Lesorgen v. Mondelez Glob., LLC*,
674 F. Supp. 3d 459 (N.D. Ill. 2023)........ 9

*Manley v. Hain Celestial Grp., Inc.*,
417 F. Supp. 3d 1114 (N.D. Ill. 2019)........ 14

*McCoy v. Midland Funding, LLC*,
2019 WL 2773703 (N.D. Ill. July 2, 2019)........ 12

*Nance v. EMAGES, Inc.*,
2022 WL 2116581 (N.D. Ill. June 13, 2022)........ 15

*Novotney v. Walgreen Co.*,
683 F. Supp. 3d 785 (N.D. Ill. 2023)........ 2, 5, 6, 8

*Polk v. City of Chicago*,
2025 WL 296307 (N.D. Ill. Jan. 24, 2025)........ 15

*Quackenbush v. Am. Honda Motor Co., Inc.*,
650 F. Supp. 3d 837 (N.D. Cal. 2023)........ 14

*Seale v. GSK Consumer Health, Inc.*,
718 F. Supp. 3d 1208 (C.D. Cal. 2024)........ 6

*Silva v. Haleon US Inc.*,
2024 WL 5059174 (N.D. Cal. Dec. 2, 2024) .......... 7

*Suarez v. Playtex Prods., Inc.*,
2009 WL 2212315 (N.D. Ill. July 24, 2009) .......... 13

*Wach v. Prairie Farms Dairy, Inc.*,
2022 WL 1591715 (N.D. Ill. May 19, 2022) .......... 11

*Wynn v. Topco Assocs., LLC*,
2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) .......... 14

**Statutes**

21 U.S.C. § 352 .......... 6

21 U.S.C. § 379r .......... 1, 5

Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136,
§ 3851, 134 Stat. 281, 435 (2020) .......... 2

**Regulations**

21 C.F.R. § 330.1 .......... 2, 5, 6, 15

21 C.F.R. § 330.10 .......... 2

21 C.F.R. § 355.1 .......... 1, 3, 5, 6, 8, 15

21 C.F.R. § 355.50 .......... 1, 3, 5

**Other Administrative Materials**

Anticaries Drug Products for Over-the-Counter Human Use; Final Monograph,
60 Fed. Reg. 52474 (Oct. 6, 1995) .......... 3, 7, 8

## INTRODUCTION

Plaintiffs in this putative class action challenge the labeling and advertising of Kid's Crest fluoride toothpastes sold by The Procter & Gamble Company ("P&G"). Although the Amended Complaint is littered with provocative allegations about the adverse effects of children inadvertently ingesting fluoride, this case has nothing to do with fluoride, much less its safety or efficacy. And no Plaintiff alleges that they or their children were injured by ingesting fluoride.

Rather, this case is about how many brushings one can get out of a tube. The thrust of the Amended Complaint is that certain images on the packaging misled Plaintiffs into permitting their children to use too much toothpaste with each brushing, resulting in "less brushings per tube," and they seek economic damages on the ground that they allegedly used up the toothpaste faster than they otherwise would have. ECF No. 9 ("Am. Compl.") ¶¶ 218, 239, 247, 255. Plaintiffs advance this argument even though the package directions tell them exactly how much toothpaste to use.

Plaintiffs' claims are preempted by federal law. The Food & Drug Administration ("FDA") has established detailed regulations that confirm that fluoride toothpastes like Kid's Crest are safe, effective, and not misbranded when labeled according to these regulations. *See* 21 C.F.R. §§ 355.1, 355.50. Plaintiffs do not dispute that Kid's Crest toothpastes comply with all aspects of these regulations. Rather, they are attempting to use state law to impose *additional* restrictions on the labeling for Kid's Crest beyond what federal law requires. But Congress has enacted an express preemption provision that bars attempts to impose any state-law requirement "that is different from or in addition to" or "otherwise not identical with" federal law. 21 U.S.C. § 379r(a). This Court should dismiss all of Plaintiffs' claims on that basis alone.

The Amended Complaint has several additional flaws, any of which provide an independent basis for dismissal. For example, Plaintiffs advance several theories of deception in their Amended Complaint, but they do not plausibly allege that a reasonable consumer would be

deceived by any of the representations that they point to, and they do not plead their claims with the specificity required by Rule 9(b). And the barrage of irrelevant allegations about fluoride has nothing to do with Plaintiffs' claims and should be struck under Rule 12(f).

## BACKGROUND

### A. The FDA's Regulations Approving Fluoride Toothpastes.

The FDA regulates most over-the-counter ("OTC") drugs through a "monograph" process.[1] A monograph is a set of detailed regulations describing the conditions under which a category of drugs may be marketed without individualized FDA review and approval. *See Novotney v. Walgreen Co.*, 683 F. Supp. 3d 785, 789 (N.D. Ill. 2023) (Alonso, J.). An OTC drug approved through the monograph process "is generally recognized as safe and effective and is not misbranded." 21 C.F.R. § 330.1.

The FDA's monograph process is rigorous. A monograph is developed only after the FDA has appointed an advisory panel of independent qualified experts, which reviews the data and reports its "conclusions and recommendations" to the FDA "with respect to the safety and effectiveness of the drugs." 21 C.F.R. § 330.10(a)(1), (3). Based on the panel's recommendations, the FDA publishes a proposed monograph for public comment. *Id.* § 330.10(a)(7). "After reviewing [any] objections, the entire administrative record including all new data and information and comments, and considering the arguments made at any oral hearing," the FDA publishes a final monograph. *Id.* § 310.10(a)(9).

---

[1] The CARES Act overhauled the way the FDA administers the OTC monograph process by converting existing monograph regulations to administrative orders and replacing notice-and-comment rulemaking with an administrative order process. *See* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 3851, 134 Stat. 281, 435 (2020). The previous process is summarized in this motion because the FDA published the final monograph for anticaries drug products in 1995. The current administrative order governing anticaries drug products appears at Final Administrative Order OTC000034, https://tinyurl.com/57kvpjws.

This case involves Kid's Crest toothpastes. Through a years-long monograph process, the FDA "establish[ed] conditions under which [OTC] anticaries drug products (products that aid in the prevention of dental cavities) are generally recognized as safe and effective and not misbranded." Anticaries Drug Products for Over-the-Counter Human Use; Final Monograph ("Anticaries Monograph"), 60 Fed. Reg. 52474, 52474 (Oct. 6, 1995). Before finalizing the Anticaries Monograph, the FDA considered "the accidental ingestion rate for fluoride toothpaste" among children, the associated risk of dental fluorosis, and whether to approve "the safety and effectiveness of a low-fluoride dentifrice for children 2 to under 6 years of age." *Id.* at 52475–76, 52486–87; Am. Compl. ¶¶ 2–3, 99–113. The FDA determined that toothpastes containing sodium fluoride or sodium monofluorophosphate, like the toothpastes at issue here, "are generally recognized as safe and effective and not misbranded" and it approved a monograph that established conditions under which the toothpastes may be sold. 60 Fed. Reg. 52474, 52506; 21 C.F.R. § 355.

The Anticaries Monograph requires companies like P&G to include specific warnings and directions on the labels of their fluoride toothpastes. 21 C.F.R. § 355.50(c), (d). Specifically, it requires P&G to include a warning—"Keep out of reach of children under 6 years of age"—and the following directions: "Instruct children under 6 years of age in good brushing and rinsing habits (to minimize swallowing). Supervise children as necessary until capable of using without supervision. Children under 2 years of age: Consult a dentist or doctor." *Id.* § 355.50(c)(1), (d)(1)(i); Am. Compl. ¶¶ 161–62. The monograph does not require sellers of fluoride toothpastes to include instructions about how much toothpaste to use, restrict what flavors are permitted, or warn about the possible effects of ingesting fluoride. *See* Am. Compl. ¶¶ 163–64, 170, 179. Any product that complies with the Anticaries Monograph's labeling requirements "is generally recognized as safe and effective and is not misbranded." 21 C.F.R. § 355.1(a).

### B. Plaintiffs' Lawsuit.

The Amended Complaint alleges that P&G deceptively labels and markets its Kid's Crest Cavity Protection and Kid's Crest Advanced toothpastes. The Amended Complaint contains pages of allegations regarding purported health risks associated with fluoride ingestion, Am. Compl. ¶¶ 2, 27–32, 35, 99–135, but Plaintiffs do not allege that their children experienced ***any*** issues using Kid's Crest, *see id.* ¶ 192 (disclaiming any personal injuries).

Rather, the gravamen of the Amended Complaint is that the "image of a full strip of toothpaste" on the Kid's Crest labels, the use of "ADA's seal of approval" on the label, and the toothpastes' "candy-like" flavor "collectively convey the false and misleading impressions that (a) the product is specially formulated to be safe for young children to ingest, and (b) a full strip [of toothpaste] is a safe and age-appropriate amount of paste for a child under 6 to use." *Id.* ¶¶ 170, 173, 179. Plaintiffs allege that, "[b]ased on the packaging" of Kid's Crest, Plaintiffs "used a full strip of paste . . . for brushings" with their children and "suffered economic loss as a result by obtaining fewer brushings per product." *Id.* ¶¶ 38–94, 176, 181.

## PROCEDURAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[I]n deciding a Rule 12(b)(6) motion, a court may consider documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

## ARGUMENT

### I. Plaintiffs' Claims Are Expressly Preempted by the FDCA.

Plaintiffs' attempts to impose additional conditions under state law beyond what federal law requires on how Kid's Crest toothpaste can be marketed are preempted by federal law. The

federal Food, Drug, and Cosmetic Act ("FDCA") contains an express preemption provision providing that "no State . . . may establish or continue in effect any requirement" relating to an OTC drug "that is different from or in addition to" or "otherwise not identical with" federal law. 21 U.S.C. § 379r(a). Congress enacted this provision to provide "[n]ational uniformity for nonprescription drugs," as reflected in the statute's title. *Id.* § 379r.

Section 379r expressly preempts Plaintiffs' claims because Kid's Crest is governed by a monograph (and now an administrative order, *see supra* n.1), which establishes conditions under which OTC fluoride toothpastes are safe, effective, and not misbranded. The Anticaries Monograph sets forth detailed labeling and warning requirements, 21 C.F.R. § 355.50, and provides that an OTC fluoride toothpaste "is generally recognized as safe and effective and is not misbranded" if it meets federal requirements, including in the Monograph, *id.* §§ 330.1, 355.1.

Plaintiffs do not dispute that Kid's Crest complies with all aspects of the Anticaries Monograph. They instead attempt to use state consumer protection law to force P&G to change the "image of a full strip of toothpaste," the "ADA's seal of approval," and certain "candy-like element[s]" on the Kid's Crest label, and otherwise alter the color, taste, and smell of Kid's Crest. *See* Am. Compl. ¶¶ 170, 179. They do so even though "it is clear that the label in question complies with federal standards by 'advertising accurately' the uses for which the product has been approved as safe and effective" under the Monograph. *Novotney*, 683 F. Supp. 3d at 792 (cleaned up). A claim "that some other terminology is necessary to ensure that the label is not misleading" impermissibly "imposes requirements that are different from, additional to, or otherwise not identical with, the requirements of the FDCA," and is preempted. *Id.* (claims challenging aspect of label not required by monograph were expressly preempted).

It makes no difference that Plaintiffs accuse P&G of violating the general prohibition on

"false and misleading labeling" codified at 21 U.S.C. § 352(a). Am. Compl. ¶¶ 36, 158, 182. The FDA has declared that a fluoride toothpaste like Kid's Crest "is generally recognized as safe and effective and is not misbranded if it meets . . . each of the conditions contained in [the] applicable monograph." 21 C.F.R. § 330.1; *see also id.* § 355.1 (toothpaste that complies with Anticaries Monograph "is generally recognized as safe and effective and is not misbranded"). Plaintiffs do not—and cannot—allege that the Kid's Crest label fails to comply with the applicable monograph. Accordingly, "if Plaintiff[s] were permitted to proceed on the theory that [their] claims are parallel to § 352(a)(1), any finding of liability in [their] favor would conflict with preexisting regulations" deeming Kid's Crest "not misbranded," and "would do exactly what Congress, in passing § 379r, sought to forbid: using state law causes of action to bootstrap labeling requirements that are 'not identical with' federal regulation." *Seale v. GSK Consumer Health, Inc.*, 718 F. Supp. 3d 1208, 1222 (C.D. Cal. 2024) (rejecting reliance on § 352(a) and finding labeling claims preempted where product complied with monograph); *see also Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014) (same, in context of toothpaste products); *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 37–38 (2d Cir. 2020) (similar general misbranding statute could not be used "to impose [] *additional* labeling requirements" because to do so would construe state law "to impose many 'requirements' that are not contained" in the federal statute or regulations).

It also is irrelevant that the Anticaries Monograph "does not require the label of fluoride toothpastes to depict full strips of toothpaste," "does not require fluoride toothpastes to be presented as candy-like products," "does not require fluoride toothpastes to have cartoon imagery," and "does not require fluoride toothpastes to state that they are approved by the ADA." Am. Compl. ¶¶ 163–66. As this Court has explained, "whether the FDA specifically approved the use of [the statement at issue] is beside the point." *Novotney*, 683 F. Supp. 3d at 792. State-law claims

that seek to prescribe how products may be labeled and marketed beyond what is in the Anticaries Monograph are preempted just the same. That is why courts have dismissed as preempted state-law claims that seek to impose additional limits on the labeling of fluoride toothpastes like Kid's Crest that are not in the Anticaries Monograph. *See Silva v. Haleon US Inc.*, 2024 WL 5059174, at *6 (N.D. Cal. Dec. 2, 2024) (claims challenging use of "rebuilds" or "restores" enamel on toothpaste label expressly preempted because not prohibited by Anticaries Monograph); *Bowling*, 65 F. Supp. 3d at 376 (claims challenging "Restores Enamel" on toothpaste label expressly preempted because not prohibited by Anticaries Monograph). This Court should do the same.

Indeed, the reason these requirements do not appear in the Anticaries Monograph is because the FDA considered many of the concerns raised in the Amended Complaint, yet determined that the instructions approved in the Monograph were sufficient to address them. For example, the FDA weighed concerns "that young children are most susceptible to mild fluorosis as a result of improper use and swallowing of a fluoride dentifrice product," yet required only that the label state: "Children under 2 years of age: Consult a dentist or doctor." 60 Fed. Reg. 52474, 52487. Similarly, the FDA agreed that "children should be trained how to brush their teeth so that they will obtain the desired benefit of toothbrushing without swallowing excessive amounts of toothpaste, which would increase their risk of fluorosis," but to that end required only that the label state: "Instruct children under 6 years of age in good brushing and rinsing habits (to minimize swallowing). Supervise children as necessary until capable of using without supervision." *Id.* at 52488. In crafting these instructions, the FDA underscored that it is the *parents'* obligation "to assure themselves that their children are learning the proper use of dentifrices," and that "the labeling should make this point without being unnecessarily overcautious or alarmist" about using fluoride toothpaste with children. *Id.* The FDA also explicitly rejected the suggestion that a lower-

fluoride toothpaste for children 2 to 6 years would be safe and effective. In doing so, it reasoned that "the risk of dental caries from inadequate fluoride protection is a greater health hazard than the cosmetic detriment of fluorosis." *Id.* at 52476. The FDA's conclusion relied in part on evidence that "the reported increase in enamel fluorosis, which ranges from very mild to mild, appears to be a result of factors *other than* dentifrice use, while, importantly, dentifrice use has been the principal contributor to the caries decline over the past 20 years." *Id.* (emphasis added).

The FDA carefully considered the warnings and directions to be provided on fluoride toothpaste labels and determined that the language in the Anticaries Monograph—and in turn used on the Kid's Crest labels—was sufficient to confirm the products were "safe and effective" and "not misbranded." 21 C.F.R. § 355.1.[2] There is no reason to believe that a court or private litigant "would come to a more informed conclusion regarding the label that should be put on a product than the FDA would after a notice-and-comment proceeding in which all interested parties have an opportunity to participate." *Goldstein v. Walmart, Inc.*, 637 F. Supp. 3d 95, 113 (S.D.N.Y. 2022); *see also Bowling*, 65 F. Supp. 3d at 377 ("[T]he whole point of section 379r is that it is not up to private litigants—or judges—to decide what is 'false or misleading.' It is up to the FDA."). P&G's undisputed compliance with the Anticaries Monograph means that Kid's Crest is not misbranded, and Plaintiffs' state-law claims, which require them "to establish, in essence, that state law imposes labeling requirements . . . that are different from, additional to, or otherwise not identical with, requirements of federal law," are preempted. *Novotney*, 683 F. Supp. 3d at 790.

[2] That makes this case distinguishable from *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 483–85 (7th Cir. 2020), where the relevant FDA regulations were "silen[t]" on the issue. *See* Am. Compl. ¶ 37 n.25. Unlike the food label in *Bell*, here the FDA weighed various formulations of the warnings and directions to address the very issues Plaintiffs raise and determined that the specific language in the Anticaries Monograph was sufficient to dispel any concern or confusion.

## II. Plaintiffs' Theories of Deception Are Not Plausible.

All of Plaintiffs' claims require them to plausibly allege that P&G made a false or deceptive statement that has "the capacity to deceive" a reasonable consumer. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001); *see also e.g.*, *Craw v. Clorox Co.*, 692 F. Supp. 3d 854, 862 (C.D. Ill. 2023) (implied warranty "require[s] a plaintiff to show that the label statements in question were likely to mislead a reasonable consumer"); *Castaneda v. Amazon.com, Inc.*, 679 F. Supp. 3d 739, 748 (N.D. Ill. 2023) (consumer protection claims require "that the statement was likely to deceive a reasonable consumer"). Under this standard, there must be "a probability that a significant portion of the general consuming public, acting reasonably in the circumstances, could be misled." *Brodsky v. Aldi Inc.*, 2021 WL 4439304, at *4 (N.D. Ill. Sept. 28, 2021) (cleaned up). And because "the primary evidence in a false advertising case is the advertising itself," it is "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer" on a motion to dismiss. *Id.*

Plaintiffs advance three overarching theories of deception: (1) the "image of a full strip of toothpaste" misleads consumers into believing that children should use "a full strip" of toothpaste, notwithstanding the instructions on the package; (2) the "ADA's seal of approval" on Kid's Crest is misleading without "the ADA's guideline that children under three should use no more than a smear" of toothpaste; and (3) the use of "cartoon" imagery and "candy-like" flavors misleads consumers into believing that children can ingest Kid's Crest. Am. Compl. ¶¶ 165, 170, 173, 179, 214, 236, 245, 253, 260. None is plausible.

*First*, it is not plausible that a reasonable consumer would interpret the "full strip" imagery as essentially an instruction for use, as Plaintiffs allege. *See Lesorgen v. Mondelez Glob., LLC*, 674 F. Supp. 3d 459, 465 (N.D. Ill. 2023) (courts may dismiss claims based on "unreasonable or fanciful interpretations of labels"). That is especially the case since the directions on the packaging

state the opposite: "***use a pea-sized amount*** in children under 6." Decl. of Robert Rankin ("Rankin Decl."), Ex. A at 2 (emphasis added); *see also id.* Ex. B at 2, Ex. C at 2, Ex. D at 2.

Plaintiffs suggest that this instruction is irrelevant because it does not appear on the front label of Kid's Crest, *see* Am. Compl. ¶¶ 185–86, but that is wrong. "An alleged deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Karlinski v. Costco Wholesale Corp.*, 616 F. Supp. 3d 753, 764 (N.D. Ill. 2022). That information includes "the rest of the packaging" and "general knowledge about the product." *Bohen v. ConAgra Brands, Inc.*, 2024 WL 1254128, at *7 (N.D. Ill. Mar. 25, 2024). Here, Kid's Crest is a drug product regulated by the FDA. *See supra* at 4–8. Unlike food, "consumers [are] accustomed to seeing the FDA-mandated 'Directions' on the back of an over-the-counter product" because FDA requirements are a critical aspect of a drug's label. *Engram v. GSK Consumer Healthcare Holdings (US), Inc.*, 2021 WL 4502439, at *5 (E.D.N.Y. 2021). For that reason, "it is not too much to expect a reasonable consumer to review the directions on an" OTC drug "where, as here, a similar set of directions is present on all [OTC drugs] pursuant to FDA regulations." *Id.* This is especially true given that this product is intended for use by children, and reasonable consumers of the product (*i.e.*, parents) would pay close attention to the instructions to determine how much toothpaste their children should use.

*Second*, Plaintiffs do not plausibly allege that the presence of the ADA "seal of approval" is misleading. The "seal of approval" is a certification from the ADA, a third party.[3] Plaintiffs do not—and cannot—allege that Kid's Crest is not ADA-accepted. For that reason alone, Plaintiffs' theory fails: "The [ADA seal] does exactly its purpose—the product is [ADA]-certified. That label

[3] *See* ADA Seal of Acceptance, https://www.ada.org/resources/research/science-and-research-institute/ada-seal-of-acceptance.

is not a lie." *Bohen*, 2024 WL 1254128, at *7 (no deception where plaintiffs "do not allege that [defendant] violated [third party's] standards or that the [third-party] certification on the packaging is inaccurate"); *see also Lee v. Canada Goose US, Inc.*, 2021 WL 2665955, at *6 (S.D.N.Y. June 29, 2021) (no deception because defendant was, in fact, certified).

Nor do Plaintiffs allege *how* the ADA seal would lead a reasonable consumer to believe that children under three should use more than a "smear" of toothpaste. Plaintiffs admit they are not seeking "to require [P&G] to disclose that children under 3 should only use a 'smear' of paste," Am. Compl. ¶ 37 n.24—indeed, any such claim would be preempted, *see supra* at 4–8—yet they identify no other aspect of the ADA seal that is allegedly misleading. The ADA seal says nothing about how much toothpaste should be used each time a child brushes his teeth. *See* Am. Compl. ¶¶ 20, 167, 176. Accordingly, Plaintiffs' claim about how consumers interpret the ADA seal is, at best, a "conclusory" statement that this Court "need not accept." *Wach v. Prairie Farms Dairy, Inc.*, 2022 WL 1591715, at *3 (N.D. Ill. May 19, 2022).

*Third*, Plaintiffs do not plausibly allege that a reasonable consumer—in this case, a reasonable parent purchasing toothpaste for their young children—would equate *anything* on the Kid's Crest label as a representation that toothpaste is safe for children to ingest. Once again, the label says the exact opposite: "do not swallow." Rankin Decl. Ex. A at 2; Ex. B at 2; Ex. C at 2; Ex. D at 2. That alone should end the matter. *See supra* at 9–10. As the FDA has recognized and as courts have agreed, "responsibility for a child's safety lies primarily with its parents, whose duty it is to see that his behavior does not involve danger to himself." *Gutterman v. Target Corp.*, 242 F. Supp. 3d 695, 702 (N.D. Ill. 2017).

Plaintiffs assert that "cartoon" imagery and "candy-like" flavors mislead consumers into thinking that Kid's Crest is safe to ingest, Am. Compl. ¶¶ 165, 170, 179, but neither theory is

plausible. A reasonable parent would not interpret "rainbow-colored crayon font" or a picture of a chameleon to mean that toothpaste is safe for children to ingest. The picture of a chameleon refers only to the fact that the toothpaste changes color as teeth are brushed, to encourage adequate brushing. *See id.* ¶¶ 176, 179. A reasonable parent also would not interpret a toothpaste's flavor to mean that toothpaste is safe to eat, because toothpaste is not food. *See Bohen*, 2024 WL 1254128, at *7 (court must "account for all information available to consumers," including "general knowledge about the product"). That is particularly true here: The flavors that Plaintiffs challenge—"sparkle fun" and "bubble gum"—are not edible substances. Am. Compl. ¶ 170.

While the Amended Complaint suggests that candy-like flavoring might "signal *to a child* that toothpaste is intended to be consumed as if it were food," *id.* ¶ 154 (emphasis added), children do not purchase toothpaste—parents do, *see id.* ¶¶ 38, 45, 51, 57, 63, 70, 75, 80, 85, 90 (alleging that parents purchased the toothpaste for their minor children). And the label instructs parents to "supervise children's brushing until good habits are established." Rankin Decl. Ex. A at 2; Ex. B at 2; Ex. C at 2; Ex. D at 2. No reasonable adult parent—who, presumably, uses toothpaste—would understand the flavor of a toothpaste to mean that it could be ingested. Indeed, "the reasonable consumer is not a dimwit and is capable of making basic logical deductions and inferences." *McCoy v. Midland Funding, LLC*, 2019 WL 2773703, at *2 (N.D. Ill. July 2, 2019).

### III. Plaintiffs Fail to Allege Their Consumer Protection Claims with the Particularity Required by Rule 9(b).

Even if Plaintiffs had plausibly alleged there was anything deceptive about the Kid's Crest packaging—they have not—their claims still fail because they do not allege with particularity why those statements deceived them. Rule 9(b) requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Plaintiffs' consumer protection claims (Claims II–V) are each predicated on alleged deception regarding the proper

amount of toothpaste to use, *see* Am. Compl. ¶¶ 236, 245, 253, 260, and so they must satisfy Rule 9(b)'s heightened pleading requirements. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (applying Rule 9(b) to ICFA claims based on deceptive acts); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2020) (same for UCL claims); *Suarez v. Playtex Prods., Inc.*, 2009 WL 2212315, at *2 (N.D. Ill. July 24, 2009) (same for GBL § 349).

The Amended Complaint fails to satisfy Rule 9(b)'s heightened pleading standard because it does not identify a specific deception that was a "but-for" cause of Plaintiffs' injury, *i.e.*, the "how of the fraud." *Haywood v. Massage Envy Franchising, LLC.*, 887 F.3d 329, 334 (7th Cir. 2018). Plaintiffs do not allege which specific statements or omissions allegedly caused them to permit their children to use a full strip of toothpaste. Plaintiffs allege generally that they based their "belie[f] [that] the product was specially formulated to be safe for young children to ingest" on "the packaging," but they do not say what ***about*** the packaging gave them that belief. *See* Am. Compl. ¶¶ 44, 50, 56, 62, 69, 74, 79, 84, 89, 94.

Moreover, whether they allegedly believed the toothpaste was "safe for young children to ingest" is irrelevant to their only theory of damages: that "Plaintiffs and Class Members purchased more of the Products, and/or paid more per brushing, than they would have." *Id.* ¶ 190. Plaintiffs do not allege that they allowed their children to use a full strip of toothpaste ***because*** of anything on the Kid's Crest label—doing so would be contrary to the label's instructions. And to the extent any Plaintiffs did (unreasonably) interpret the image in this manner, their claims would fail because the alleged economic injury is the result of Plaintiffs' own failure to follow the clear directions on the label, not any conduct by P&G.

The Amended Complaint otherwise contains only generalized references to advertisements that Plaintiffs did not and could not have seen. ***None*** of the Plaintiffs alleges to have seen anything

other than the "packaging" in deciding whether to buy and how to use Kid's Crest. *See* Am. Compl. ¶¶ 38–94. Nor could Plaintiffs possibly make such allegations, since many of the advertisements they cite are decades old. *Id.* at 32–33 (depicting print advertisement dated 1979). Plaintiffs cannot state a claim based on advertisements they never saw. *See, e.g.*, *Camasta*, 761 F.3d at 738–39 (dismissing claims based on advertising practices from a different time period).

**IV. Plaintiffs' Implied Warranty Claim Fails for Additional Reasons.**

Plaintiffs' breach-of-implied-warranty claim fails for two additional reasons.

*First*, the laws of the states where Plaintiffs reside—Illinois, California, and New York—each require privity to state an implied warranty claim. *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1124 (N.D. Ill. 2019) (Alonso, J.); *Quackenbush v. Am. Honda Motor Co., Inc.*, 650 F. Supp. 3d 837, 843 (N.D. Cal. 2023); *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021). Plaintiffs allege they purchased Kid's Crest at retail stores such as Walmart, Target, and Walgreens, not directly from P&G. *See* Am. Compl. ¶¶ 39, 46, 52, 58, 65. Privity therefore does not exist because "a retail purchaser" is "not in privity with a good's manufacturer." *Hoffmann v. Kashi Sales, L.L.C.*, 646 F. Supp. 3d 550, 562 (S.D.N.Y. 2022).

*Second*, Plaintiffs do not plausibly allege that Kid's Crest is unfit "for the ordinary purposes for which" toothpaste is used. *Higgins v. Yamaha Motor Corp.*, 741 F. Supp. 3d 768, 774 (N.D. Ill. 2024); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1096 (N.D. Cal. 2017); *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433–34 (2d Cir. 2013). Plaintiffs do not allege that Kid's Crest failed to clean their children's teeth, which is its intended purpose. *See Wynn v. Topco Assocs., LLC*, 2021 WL 168541, at *7 (S.D.N.Y. Jan. 19, 2021) (dismissing implied warranty claim where "there is no allegation that the almond milk was unfit for human consumption"). Although Plaintiffs alternatively allege that Kid's Crest does not "conform to the promises or

affirmations of fact made on the products' packaging," Am. Compl. ¶ 208, that theory fails for the reasons above, *see supra* at 9–12.

## V. This Court Should Strike Allegations Regarding the Alleged Effects of Fluoride.

The Court should strike the portions of the Amended Complaint—namely, ¶¶ 2, 27–32, 35, and 99–135—that allege potential health effects of ingesting fluoride, because those allegations are wholly irrelevant to Plaintiffs' claims and alleged damages. Rule 12(f) permits a court to strike "any redundant, immaterial, impertinent, or scandalous matter." Motions to strike "are appropriate if they serve to expedite litigation, and courts considering them have considerable discretion." *Polk v. City of Chicago*, 2025 WL 296307, at *2 (N.D. Ill. Jan. 24, 2025) (Alonso, J.).

The Amended Complaint contains pages of allegations regarding the potentially adverse health consequences of ingesting fluoride. *See* Am. Compl. ¶¶ 2, 27–32, 35, 99–135. These allegations are both immaterial and impertinent. Plaintiffs do not allege that their children ingested fluoride, and they explicitly state that they are not seeking "recovery for any personal injuries." *Id.* ¶ 192. Rather, they claim to have "lost money" from getting "less brushings per tube," which has nothing to do with fluoride and the alleged effects of ingesting it. *Id.* ¶¶ 191, 218.

Plaintiffs' irrelevant statements about fluoride only serve to confuse the issues and should be stricken. *See, e.g.*, *Nance v. EMAGES, Inc.*, 2022 WL 2116581, at *2 (N.D. Ill. June 13, 2022) (Alonso, J.) (granting motion to strike where "plaintiff includes a significant amount of redundant and immaterial content"). Striking these paragraphs now will foreclose a discovery fishing expedition into the safety of fluoride—a question irrelevant to this case, and one the FDA had already studied and concluded is safe when used consistent with the Anticaries Monograph. 21 C.F.R. §§ 330.1, 355.1.

## CONCLUSION

This Court should dismiss the Amended Complaint with prejudice.

DATED: March 25, 2025

Respectfully submitted,

*/s/ Andrew Soukup*
Andrew Soukup
Alyssa McGraw
Jonah Panikar
Anand Balaji
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001
Email: asoukup@cov.com
amcgraw@cov.com
jpanikar@cov.com
abalaji@cov.com

Cortlin Lannin
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Email: clannin@cov.com

*Counsel for Defendant The Procter & Gamble Company.*